IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MICHAEL S.,[1]

Plaintiff,

v.

COMMISSIONER, Social Security Administration,

Defendant.

Case No. 6:18-cv-01107-MK

**OPINION AND ORDER**

---

**Kasubhai,** United States Magistrate Judge:

Plaintiff Michael S. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* (ECF No. 6). For the reasons that follow, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI in May and June of 2013, alleging a disability onset date of March 19, 2013.[2] Tr. 15, 253–56. His applications were denied initially and upon reconsideration. Tr. 92–104, 105–117, 120–33, 134–47. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a supplemental hearing[3] was ultimately held on January 5, 2017. Tr. 15, 39–91, 169–70. On March 16, 2017, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 15–27. The Appeals Council denied Plaintiff's request for review on April 21, 2018, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

## FACTUAL BACKGROUND

Born in 1960, Plaintiff was 52 years old on his alleged onset date. Tr. 103. He obtained a GED and has past work experience as a poultry dresser, machine packager, and agricultural produce sorter. Tr. 66, 82–83. He alleges disability based on schizophrenia. Tr. 284.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's]

---

[2] "Tr." citations are to the Administrative Record. (ECF No. 14).

[3] At the request of Plaintiff's representative, the ALJ granted a postponement during a July 2016 hearing "to obtain a neuropsychological evaluation" of Plaintiff. Tr. 15.

conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The claimant has the initial burden of proof to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that

the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since the alleged onset date.[4] Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia; borderline intellectual functioning; schizoaffective disorder, depressive type; and an unspecified neurocognitive disorder. *Id.*

[4] The ALJ's decision erroneously states that Plaintiff's alleged onset date was September 1, 2002. Tr. 17. However, elsewhere in the decision the ALJ referred to Plaintiff's correct alleged onset date of March 19, 2013. *See* Tr. 15, 21. As such, any error was harmless.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. Tr. 18. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following limitations:

> He can perform simple, easy to learn, routine, unskilled work with a [Dictionary of Occupational Titles General Educational Development] reasoning level of two or less. He cannot perform work requiring fast-paced production quotas or strict time demands for production. He cannot interact with the public, and he can have only occasional interaction with coworkers and supervisors. He needs a static work environment with few changes in work routines and settings.

Tr. 20.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers such that Plaintiff could sustain employment despite his impairments. Tr. 25. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 26.

## DISCUSSION

Plaintiff asserts that remand is warranted for three reasons. First, he argues the ALJ was required to find him presumptively disabled at step three. Second, Plaintiff asserts that the ALJ erred by improperly rejecting his subjective symptom testimony. Finally, he asserts the RFC and corresponding hypothetical to the VE failed to include all of his limitations. The Court addresses each argument in turn.

### I. Listed Impairments

At step three, an ALJ must evaluate the relevant evidence to assess whether a claimant's impairments meet or equal a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment

does not do so. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). An ALJ, however, is only required to discuss and evaluate the evidence that supports his or her conclusion. *Lewis*, 236 F.3d at 513. Further, a claimant bears the burden of proving that her impairments meet or equal a listing. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) ("To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment[.]").

Plaintiff asserts the ALJ erred in not finding him presumptively disabled at step three under the following Mental Disorder Listings: 12.02, Neurocognitive Disorders; 12.03, Schizophrenia; 12.04, Affective Disorders; and 12.11, Neurodevelopment Disorders. *See* Pl.'s Op. Br. 12–14; *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective Jan. 17, 2017 to March 26, 2017). To meet the Mental Disorder Listings relevant here, "a claimant must demonstrate a combination of criteria from paragraphs A, B, and/or C." *Blake L. v. Berryhill*, No. 3:17-cv-01647-YY, 2019 WL 289098, at *12 (D. Or. Jan. 4, 2019), *adopted*, 2019 WL 281285 (D. Or. Jan. 22, 2019). To satisfy the paragraph B criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning" that include (1) interacting with others; (2) concentrating, persisting, or maintaining pace; (3) adapting or managing oneself; and (4) understanding, remembering, or applying information. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ highlighted specific references to the record in support of his findings that Plaintiff was markedly limited in his ability to interact with others and moderately limited in each of the three other functional areas. Tr. 18–19. For example, in support of the ALJ's finding

that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace, the ALJ cited evidence that Plaintiff was able to "care[] for his son" and complete basic chores around the home. Tr. 18. Regarding the ALJ's finding that Plaintiff had moderate limitations in adapting and managing oneself, the ALJ noted that Plaintiff was able to maintain basic hygiene and cited reports that Plaintiff was able to independently complete "tasks such as laundry" and prepare simple meals. Tr. 368; *see also* Tr. 19. Finally, regarding the ALJ's finding that Plaintiff was moderately limited in understanding, remembering, and applying information, the ALJ highlighted, among other records, a 2016 neuropsychological evaluation that "showed average working memory" and Plaintiff's ability to follow "brief verbal and written directions without difficulty." Tr. 18 (citing Tr. 487–91).

As such, the ALJ sufficiently discussed and evaluated the relevant evidence that supported his conclusions. *See Lewis*, 236 F.3d 503 at 513. Although Plaintiff presents an alternative interpretation of the medical evidence, the ALJ's finding was a rational interpretation of the record and must therefore be upheld, especially given that "[l]isted impairments are purposefully set at a high level of severity . . . . " *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citation and quotation omitted); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision[.]") (internal citations omitted).

The ALJ's step three finding is affirmed.

## II. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[5] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The Commissioner asserts the ALJ properly rejected Plaintiff's subjective symptom testimony because: (A) his mental health impairments were controlled with medication; (B) Plaintiff's activities conflicted with his testimony; and (C) the record contained a lack of

---

[5] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

objective medical evidence.

**A. Medication**

The ALJ discounted Plaintiff's testimony because his mental health conditions were controlled with medication. Tr. 21. The "type, dosage, effectiveness, and side effects of any medication" is an appropriate factor for an ALJ to consider in assessing a claimant's subjective symptom testimony. 20 C.F.R. § 404.1529(c)(3). Further, "[i]mpairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, however, the ALJ failed to consider Plaintiff's limited improvement in the broader context of the record as a whole. An ALJ may not simply cherry-pick evidence to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in [the claimant's] records . . . and ignored the many others that indicated continued, severe impairment."); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (noting the cyclical nature of mental health diagnoses and instructing caution in drawing inferences based upon reports of improvements during treatment).

For example, the ALJ highlighted a November 2012 treatment note—five months before Plaintiff's alleged onset date—where Plaintiff reported his medication "seeme[d] to be alright." Tr. 353. However, at the same appointment he presented with a labile mood and flat affect. *Id.* Moreover, the Commissioner's further reliance on reports that Plaintiff's "auditory hallucinations were not bothersome," and that Plaintiff received limited relief at times from his medications, fails to establish that Plaintiff's mental health impairments were controlled with medication. Def.'s Br. 5–6 (citing Tr. 379, 425, 494, 512).

Indeed, an independent review of treatment notes from between November 2013 and July 2016, reveals that Plaintiff consistently presented with significant mental health related complaints. *See, e.g.*, Tr. 397 (reporting that Plaintiff was "not sure if [his medication] was working like it should" at an emergency counseling session held because he was in "crisis"); Tr. 385 (reporting increasing problems with focus and concentration and presenting with dysthymic mood and mildly impaired judgment and insight); Tr. 382 ("He reported he sometimes hears voices. He reported he thinks people are watching him or out to get him."); Tr. 384 (reporting "hearing voices, thinking people are watching him, social anxiety, depressed mood, and irritability interfere with daily functioning and prevent him from attending social activities"); Tr. 470–71 (reporting "increased problems with paranoia" and agitation and requesting change in medication delivery); Tr. 462 (reporting increase in symptoms); Tr. 456 (requesting medication adjustment and reporting inability to "remember what [Plaintiff was] doing" and confusion); Tr. 443 (reporting "difficulty concentrating, paranoia, hearing voices, delusions, social anxiety, irritability, and anger"); Tr. 431–32 (reporting impaired memory, deficits in intellectual functioning, and "[p]overty of content" in thought content and processes); Tr. 505 ("He is not having any psychosis at present however continues to be functionally impaired to the point that I do not see him as able to maintain employment due to issues of focus and concentration.").

Accordingly, Plaintiff's response to his medication was not a clear and convincing reason to reject his subjective symptom testimony related to his mental health impairments. *See Garrison*, 759 F.3d at 1018 ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.")

(emphasis in original).[6]

### B. Activities of Daily Living

An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The Commissioner contends the ALJ properly rejected Plaintiff's testimony, arguing his "activities were significant, and they were normal." Def.'s Br. 7. The Commissioner asserts Plaintiff's ability to care for his "son without difficulty," shop for groceries, cook meals, do yardwork, care for animals, launder clothes, go on walks, talk to his neighbor, watch television, play video games, and attend a wedding "for fun" undermined Plaintiff's testimony relating to his mental health impairments. *Id*. The Commissioner, however, overstates many of Plaintiff's limited activities and fails to identify any meaningful inconsistencies.

For example, at an appointment where Plaintiff complained of "focus and concentration" issues, his wife expressed concern that "he [was] not supervising their son quite as well as he

---

[6] To the extent the ALJ additionally sought to impugn Plaintiff's testimony based on an "admission" that "he had not been taking his medication" or had a "gap in treatment of almost a year," the Ninth Circuit has explained that an ALJ commits reversible error in discrediting a claimant for failing to take medications, instructing that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *See Garrison*, 759 F.3d at 1018 n.24 (9th Cir. 2014) (citation omitted). Accordingly, these were not clear and convincing reasons to reject Plaintiff's testimony.

should . . . .” Tr. 385. Indeed, Plaintiff expressly sought treatment in September 2013 based on “increasing agitation toward his wife and towards his 18[-month old] son.” Tr. 355. He explained that he was afraid of hurting his son when his son “thr[ew] a fit,” to the point where Plaintiff had to set “him down and leave[] the room.” *Id.*

Although Plaintiff testified that he shopped for groceries, he qualified his response explaining that he was always accompanied by his wife. Tr. 79. Plaintiff's meal preparation consisted largely of simple meals such as “fr[ied] eggs” and frozen fish sticks he placed in the oven. Tr. 70–78. As for Plaintiff's ability to complete yardwork and care for animals, the ALJ's decision fails to explain how those activities conflict with his testimony. *See Smolen*, 80 F.3d at 1284 (instructing that to properly discredit a claimant on the basis that his activities contradict his testimony, the “ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion”) (citation omitted). The ALJ failed to do so here.

Finally, even assuming Plaintiff is capable of the modest activities cited by the Commissioner and ALJ, the Ninth Circuit has consistently held such a minimal level of activity is not sufficient to reject a claimant's testimony. *See Vertigan*, 260 F.3d at 1050 (“This Court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.”) (quoting *Fair v. Bowen*, 885 F.2d 597,603 (9th Cir. 1989)). The Commissioner's reliance on Plaintiff's limited domestic activities was therefore insufficient to reject his testimony.

**C. Objective Evidence**

The Commissioner argues the ALJ discounted Plaintiff's testimony because the medical evidence did not contain sufficient objective findings. However, while an ALJ may consider the

lack of objective evidence in some circumstances, it may not be the sole basis for rejecting a claimant's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, because the ALJ failed to supply at least one additional rationale to justify the rejection of Plaintiff's subjective symptom testimony, a lack of objective evidence cannot form the sole basis to reject his testimony. *See Reddick*, 157 F.3d at 722–23 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").

In sum, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. The ALJ is reversed as to this issue.

**III. RFC Formulation**

The RFC is the most a person can do despite her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical and other evidence," including the claimant's testimony as well as that of lay witnesses. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Put differently, the "RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms*." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (emphasis in original) (bracketing and quotation marks omitted) (citing SSR 96-8p, *available at* 1996 WL 374184).

Plaintiff asserts that the ALJ's RFC formulation failed to include limitations that were supported by substantial evidence in the record. The Court agrees.

The ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony. The limitations described in such testimony were required to be included in Plaintiff's RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ

failed to provide clear and convincing reasons for finding [the claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC."). As such, the ALJ's RFC assessment failed to account for all of the relevant evidence in the record and the ALJ's corresponding steps four and five determinations were not supported by substantial evidence.

The ALJ's RFC formulation must therefore be reversed and this case must be remanded.

**IV. Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176–78 (9th Cir. 2000). The court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." *Id*. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would find the claimant disabled in light of this evidence. *Id.* (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." *Id*. at 407–08 (internal citation omitted).

Here, the Court concludes the ALJ committed legal error in failing to provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony. The Court finds, however, that remanding for further proceedings would serve a useful purpose. Specifically, as

noted by the Commissioner, the record does not contain a medical opinion "as to Plaintiff's mental functional limitations." Def.'s Br. 13. The Court therefore finds the record would benefit from a consultative examination to assess the extent Plaintiff's mental limitations impact his ability to work.

Accordingly, the Court remands this case on an open record to: (1) obtain a consultative examination assessing Plaintiff's functional limitations as they relate to his mental health impairments; (2) conduct a *de novo* review of the medical opinion evidence in light of the consultative examiner's opinion; (3) reassess Plaintiff's subjective symptom testimony; and (4) conduct any further necessary proceedings.

**CONCLUSION**

For these reasons, the Commissioner's decision denying Plaintiff's applications for DIB and SSI is REVERSED and this case is REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED this 3rd day of April 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge